**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| JEREMIAH ROBERSON,<br><br>Plaintiff,<br><br>vs.<br><br>DENNIS TIPPENS, individually, VINCENT KYLE ALLEN, individually, JOHN ALLEN, individually,<br><br>Defendants. | Civil Action File<br><br>No. ____________________<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Jeremiah Roberson files this lawsuit against Dennis Tippens, individually, Vincent Kyle Allen, individually, and John Allen, individually.

1. This case is about Plaintiff Jeremiah Roberson ("Roberson"), who experienced car trouble in early July 2023 and called for help. Without a warrant or probable cause, Butts County Sheriff Deputy Defendants beat Roberson, repeatedly tased him for nearly two minutes, used other excessive force including chokeholds, seriously injured, and arrested him on charges that were later dropped in the interests of justice. One of the Defendants was charged with and found guilty of criminal battery for his attack of Roberson.

2. Roberson brings this civil action pursuant to 42 U.S.C. § 1983 for Defendants' violations of the rights and privileges granted him under the Fourth and Fourteenth Amendments to the United States Constitution.

**The Parties**

3. Plaintiff Jeremiah Roberson is a citizen and resident of Henry County, Georgia.

4. Defendant Vincent Kyle Allen ("Kyle Allen") is a citizen and resident of Butts County, Georgia.

5. At all relevant times, Kyle Allen was a Deputy in the Butts County Sheriff's Office.

6. Roberson sues Kyle Allen in his individual capacity.

7. Kyle Allen is subject to the jurisdiction of this Court.

8. Defendant John Allen ("John Allen") is a citizen and resident of Butts County, Georgia.

9. At all relevant times, John Allen was a Deputy in the Butts County Sheriff's Office.

10. Roberson sues John Allen in his individual capacity.

11. John Allen is subject to the jurisdiction of this Court.

12. Defendant Dennis Tippens ("Tippens") is a citizen and resident of Putnam County, Georgia.

13. At all relevant times, Tippens was a Corporal in the Butts County Sheriff's Office.

14. Roberson sues Tippens in his individual capacity.

15. Tippens is subject to the jurisdiction of this Court.

## Jurisdiction and Venue

16. This Court has original jurisdiction over Roberson's federal law claims pursuant to 28 U.S.C. § 1331 because this civil action arises under the Constitution and Laws of the United States.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this judicial district and the events and/or omissions giving rise to Roberson's claims occurred in this district.

## Factual Allegations

### *Car trouble: Roberson calls for help*

18. On the morning of July 3, 2023, Roberson drove southbound on U.S. Interstate 75 ("I-75") in Butts County, Georgia.

19. At approximately 2:30 in the morning on July 3, 2023, while Roberson drove southbound on I-75, he began to experience vehicle trouble.

20. Roberson called 911 to notify relevant authorities of his vehicle trouble.

21. The 911 dispatcher instructed Roberson to proceed to the JP Travel Center gas station ("JP gas") located at 2781 Highway 16 W, Jackson, Ga 30233.

22. Roberson followed the 911 dispatcher's instructions.

23. Once he arrived at JP gas, Roberson opened the hood of his vehicle, examined the car, and awaited assistance.

***Backup and a breathalyzer***

24. Shortly after Roberson's 911 call, Tippens responded to the call and met Roberson at JP gas.

25. When Tippens arrived at JP gas, Roberson was standing by his vehicle.

26. Tippens approached Roberson.

27. When Tippens approached, Roberson explained the apparent malfunctions he had been experiencing with respect to his vehicle.

28. Tippens inspected Roberson's vehicle, including the engine.

29. While Tippens inspected Roberson's vehicle, the driver's door was open.

30. Tippens looked inside Roberson's vehicle.

31. At some point shortly after Tippens arrived at JP gas, he requested a backup unit.

32. After Tippens requested backup, Kyle Allen and John Allen arrived on the scene.

33. Tippens saw what he suspected was a beer can in Roberson's vehicle.

34. Tippens asked Roberson about the suspected beer can.

35. Roberson told Tippens it was left earlier by a passenger.

36. Tippens asked Roberson if he had been drinking, which he denied.

37. During the conversation about the suspected beer can, Tippens, Kyle Allen, and John Allen surrounded Roberson.

38. At that time, Roberson was approximately five feet, seven inches tall (5’7”) and weighed approximately one hundred ten (110) pounds.

39. Tippens was significantly taller and significantly heavier than Roberson.

40. Kyle Allen was significantly taller and significantly heavier than Roberson.

41. John Allen was significantly taller and significantly heavier than Roberson.

42. Around the time of the conversation about the suspected beer can, Tippens instructed Kyle Allen to search Roberson’s person for weapons.

43. Kyle Allen searched Roberson’s person and found no weapons.

44. Kyle Allen searched Roberson’s person and found no drugs or other illegal items.

45. After the conversation about the suspected beer can, Tippens retrieved a Portable Breath Test (“breathalyzer”) device and returned to Roberson’s vehicle.

***Defendants make Roberson "hit the concrete"***

46. Roberson agreed to take a breathalyzer test.

47. Tippens held the breathalyzer in front of Roberson and moved it with the pointed extension quickly towards Roberson's mouth.

48. Roberson raised his hands to the breathalyzer.

49. This movement was reflexive and beyond Roberson's conscious control.

50. Tippens pulled the breathalyzer away from Roberson and told him not to touch it.

51. Roberson apologized to Tippens.

52. Tippens again moved the breathalyzer towards Roberson's mouth, and Roberson again reflexively raised his hands to stabilize it.

53. Tippens quickly pulled the breathalyzer away from Roberson.

54. Tippens became frustrated.

55. Tippens again instructed Roberson not to touch the breathalyzer.

56. Roberson again apologized.

57. Roberson explained his reflexive movements by indicating that he had been through some traumatic experiences.

58. Roberson explained that he did not mean to touch the breathalyzer.

59. Tippens told Roberson that he was not the one who caused Roberson's experiences.

60. Tippens told Roberson that if he raised his hands toward the breathalyzer again, Tippens would consider it an "act of aggression" and that Roberson "would hit the concrete."

61. The bodycam video shows that the movements of Roberson's hands were not acts of aggression, and no reasonable person could have considered them acts of aggression, or acts that would place any of the Defendants or any other person, including Roberson, in any danger.

62. Throughout this exchange, Roberson continued apologizing for his reflexive movements in reaching towards the breathalyzer.

63. Tippens moved the breathalyzer toward Roberson's mouth again, and Roberson again reflexively reached towards it in a non-aggressive manner that was in the form of preparing to guide the breathalyzer so that it did not strike him in his face.

64. Tippens placed the breathalyzer test on the trunk of Roberson's vehicle.

65. Tippens, Kyle Allen, and John Allen then tackled Roberson, used excessive force, employed chokeholds on Roberson, and repeatedly tased Roberson.

66. Roberson was never a threat to the officers and never struck the officers.

67. Roberson was never armed and never appeared to be armed.

68. Tippens, Kyle Allen, and John Allen caused Roberson to hit his head against his vehicle during their attempt to tackle him.

69. Tippens, Kyle Allen, and John Allen caused Roberson to hit his head against the concrete during their attempt to tackle him.

70. Roberson continued to apologize while being tackled.

71. At no point between his call for assistance and being tackled did Roberson attempt to harm any law enforcement officer.

72. At no point between his call for assistance and being tackled did Roberson threaten any law enforcement officer.

73. Shortly after the three officers attacked Roberson, Tippens pulled out his taser and pointed it at Roberson.

74. Tippens deployed his taser into Roberson's back.

75. Roberson screamed in pain.

76. Roberson continued to attempt to explain his reflexive actions.

77. Within the same minute that Tippens deployed his taser, Kyle Allen also deployed his taser on Roberson.

78. During the attack on Roberson, Tippens continuously deployed his taser on Roberson for almost two minutes.

79. During his attack on Roberson, Kyle Allen also deployed his taser on Roberson for almost two minutes.

80. At no point during his interaction with Tippens, Kyle Allen, and John Allen at JP gas did Roberson attempt to flee the scene.

81. At no point during his interaction with Tippens, Kyle Allen, and John Allen at JP gas was Roberson outside the officers' physical control.

82. After deploying his taser on Roberson, Tippens put Roberson in a chokehold on the ground.

83. Tippens, Kyle Allen, and John Allen stood surrounding Roberson, who was on the ground, while Kyle Allen continued to deploy his taser on Roberson.

84. Tippens, Kyle Allen, and John Allen stood surrounding Roberson, who was on the ground, while Tippens continued to deploy his taser on Roberson.

85. At no point during the interaction between Roberson, Tippens, John Allen, and Kyle Allen did John Allen intervene to stop the excessive force.

86. At no point did John Allen tell Tippens not to continue using the taser on Roberson.

87. At no point did John Allen tell Kyle Allen not to continue using the taser on Roberson.

88. At no point did John Allen tell Tippens not to utilize the chokehold on Roberson.

89. Roberson was writhing and screaming in pain while being continuously tased by Kyle Allen and Tippens.

### *Arrest and Deprivation*

90. After tackling, beating, choking, and tasing Roberson for nearly two minutes, Tippens, Kyle Allen, and John Allen carried Roberson to one of the officers' cars.

91. By the time of his unlawful arrest, Roberson was disoriented from the extended use of multiple tasers on his person.

92. Tippens, Kyle Allen, and John Allen violently threw and shoved Roberson into the car.

93. Tippens, Kyle Allen, and John Allen continued to issue verbal instructions that they each knew he could not understand at that time.

94. Tippens, Kyle Allen, and John Allen slammed the door on Roberson's head.

95. Defendants took Roberson to Butts County Jail.

96. At Butts County Jail, Roberson was placed in a solitary holding cell.

### *Relevant context: Use of Force*

97. At no time before tackling Roberson did Tippens, Kyle Allen, or John Allen make it objectively clear to Roberson that he was under arrest.

98. At no time during the encounter between Roberson and Tippens, Kyle Allen, and John Allen, was Roberson a threat to anyone's safety.

99. At no time during any part of the encounter between Roberson and Tippens, Kyle Allen, and John Allen, did Tippens or Kyle Allen or John Allen reasonably fear for their own safety or the safety of another person.

100. At no time during any part of the encounter between Roberson and Tippens, Kyle Allen, and John Allen, did Roberson present any threat of bodily harm to anyone.

101. At no time during any part of the encounter between Roberson and Tippens, Kyle Allen, and John Allen, did Tippens or Kyle Allen or John Allen have any reasonable belief that Roberson had committed any crime of any severity.

102. At no time during any part of the encounter between Roberson and Tippens, Kyle Allen, and John Allen, did Roberson actively resist arrest.

103. At no time during any part of the encounter between Roberson and Tippens, Kyle Allen, and John Allen, did Tippens or Kyle Allen or John Allen have any reason to believe Roberson was going to commit a forcible felony.

104. Tippens', Kyle Allen's, and John Allen's use of force upon Roberson was done with actual malice and the intent to cause Roberson physical harm and while acting under color of law.

105. The seizure of Roberson's person by Tippens, Kyle Allen, and John Allen was by excessive force.

106. Tippens', Kyle Allen's, and John Allen's use of force was without probable cause or reason.

107. Tippens', Kyle Allen's, and John Allen's use of force was not authorized by any policy or procedure.

108. Tippens', Kyle Allen's, and John Allen's use of force was not consistent with any policy, procedure, or training.

109. Tippens, Kyle Allen, and John Allen violated applicable policies and procedures through his excessive use of force while detaining Roberson.

110. On July 3, 2023, Tippens had worked as a law enforcement officer for over seven years.

111. On July 3, 2023, Kyle Allen had worked as a law enforcement officer for nearly seven years.

112. On July 3, 2023, John Allen had worked as a law enforcement officer for over five years.

113. By virtue of his training and experience in law enforcement, Tippens knew that Roberson did not obstruct law enforcement pursuant to Georgia law.

114. Tippens lacked probable cause to arrest Roberson.

115. Tippens lacked arguable probable cause to arrest Roberson.

116. Tippens, in arresting Roberson, violated Georgia law.

117. Tippens, in tackling Roberson, violated Georgia law.

118. Tippens, in placing Roberson in a chokehold, violated Georgia law.

119. Tippens, in using a taser on Roberson, violated Georgia law.

120. Tippens, in slamming Roberson's head with a car door violated Georgia law.

121. By virtue of his training and experience in law enforcement, Kyle Allen knew that Roberson did not obstruct law enforcement pursuant to Georgia law.

122. Kyle Allen lacked probable cause to arrest Roberson.

123. Kyle Allen lacked arguable probable cause to arrest Roberson.

124. Kyle Allen, in arresting Roberson, violated Georgia law.

125. Kyle Allen, in tackling Roberson, violated Georgia law.

126. Kyle Allen, in using a taser on Roberson, violated Georgia law.

127. Kyle Allen, in slamming Roberson's head with a car door violated Georgia law.

128. By virtue of his training and experience in law enforcement, John Allen knew that Roberson did not obstruct law enforcement pursuant to Georgia law.

129. John Allen lacked probable cause to arrest Roberson.

130. John Allen lacked arguable probable cause to arrest Roberson.

131. John Allen, in arresting Roberson, violated Georgia law.

132. John Allen, in tackling Roberson, violated Georgia law.

133. John Allen, in slamming Roberson's head with a car door violated Georgia law.

134. Any reasonable officer would have known that Roberson had not committed obstruction.

135. Any reasonable officer would know, based upon education, training, experience, that Roberson had not resisted arrest.

136. Any reasonable officer would know, based upon education, training, and/or experience, that Roberson had not attempted to escape or flee.

***Violations of Policy***

137. Tippens' use of the taser on Roberson violated Butts County Sheriff's Office policy.

138. Tippens' use of the taser on Roberson violated Butts County Sheriff's Office Policy #1-101, Ethics and Oaths. *See* Exhibit 1, Tippens Employee Counsel Record.

139. Tippens' use of the taser on Roberson was a Major Infraction of Butts County Sheriff's Office policy.

140. "Major Infractions are those which bring into question the employee's ability to function with the citizen's trust and confidence or those violations which bring embarrassment, discredit, or compromise to the Office of the Sheriff." Butts County Sheriff's Office Policy #P-250(IV)(C).

141. Kyle Allen's use of the taser on Roberson violated Butts County Sheriff's Office Policy #O-101, Ethics and Oaths.

142. Kyle Allen's use of the taser on Roberson was not objectively reasonable. *See* Exhibit 2, Kyle Allen Employee Counsel Record.

143. Pursuant to applicable policy in the Butts County Sherrif's Office on July 3, 2023, "[n]eck restraints or similar weaponless control techniques with a potential for serious injury [were] prohibited." Butts County Sheriff's Office Policy #O-101, Use of Force, Par. IX.

144. Tippens' use of a chokehold on Roberson on July 3, 2023, violated Butts County Sheriff's Office Policy #O-101, Use of Force, Par. IX.

***Aftermath***

145. On July 21, 2023, the State of Georgia dismissed all charges against Roberson in the "Interest of Justice." *See* Exhibit 3, Roberson's Dismissal.

146. Tippens resigned from the Butts' County Sheriff's Office on August 3, 2023.

147. Tippens was charged with simple battery for his uses of force on Roberson during the July 3, 2023, encounter.

148. On December 6, 2023, Tippens pleaded guilty to simple battery.

149. On December 6, 2023, Defendant Tippens surrendered, revoked, forfeited, and relinquished all rights, titles, and privileges or practicing as a peace officer in the State of Georgia.

**COUNT I: Excessive Force Against Defendant Tippens**

150. Roberson reincorporates paragraphs 1-149 as if fully realleged herein.

151. Roberson brings Count One under 42 U.S.C. § 1983 against Tippens in his individual capacity only for violations of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

152. At all relevant times during his interaction with Roberson on July 3, 2023, Tippens acted under color of law.

153. It was clearly established on July 3, 2023, that a law enforcement officer's use of excessive force during an arrest violated constitutional rights.

154. It was clearly established on July 3, 2023, that law enforcement officers must not use any more physical force than necessary against an individual during an arrest.

155. Tippens used more force than was necessary under the circumstances when he tackled Roberson on July 3, 2023.

156. Tippens knew he was using more force than was necessary under the circumstances when he tackled Roberson on July 3, 2023.

157. Tippens used more force than was necessary for any legitimate law enforcement purpose when he placed Roberson in a headlock on July 3, 2023.

158. Tippens knew he was using more force than was necessary for any legitimate law enforcement purpose when he placed Roberson in a headlock on July 3, 2023.

159. Tippens used more force than was necessary under the circumstances when he deployed his taser on Roberson on July 3, 2023.

160. Tippens used more force than was necessary to maintain control of Roberson when he deployed his taser on Roberson on July 3, 2023.

161. Tippens used more force than was necessary to effectuate Roberson's arrest when he deployed his taser on Roberson on July 3, 2023.

162. Tippens used more force than was necessary to prevent Roberson from fleeing when he deployed his taser on Roberson on July 3, 2023.

163. Tippens knew he was using more force than was necessary under the circumstances when he deployed his taser on Roberson on July 3, 2023.

164. Tippens's use of the taser on Roberson was unreasonable.

165. Tippens knew he did not need to use the taser on Roberson for any legitimate purpose on July 3, 2023.

166. Any reasonable officer would have known on July 3, 2023, that the use of a taser on Roberson was more force than was necessary for any legitimate law enforcement purpose.

167. Any reasonable officer would have known on July 3, 2023, that tackling Roberson was more force than was necessary for any legitimate law enforcement purpose.

168. Any reasonable officer would have known on July 3, 2023, that placing Roberson in a chokehold was more force than was reasonably necessary for any legitimate law enforcement purpose.

169. Tippens's use of force on July 3, 2023, as alleged in this Complaint on Roberson was subjectively unreasonable.

170. Tippens's use of force on July 3, 2023, as alleged in this Complaint on Roberson was objectively unreasonable.

171. Tippens's use of the taser on July 3, 2023, caused Roberson to suffer personal injuries and damages.

172. Tippens's tackling of Roberson on July 3, 2023, caused Roberson to suffer personal injuries and damages.

173. Tippens's use of a chokehold on Roberson on July 3, 2023, caused him to suffer personal injuries and damages.

174. Tippens's uses of force violated Roberson's rights secured to him by the Fourth and Fourteenth Amendments of the United States Constitution.

**COUNT II: Excessive Force Against Defendant Kyle Allen**

175. Roberson reincorporates paragraphs 1-149 as if fully realleged herein.

176. Roberson brings Count One under 42 U.S.C. § 1983 against Kyle Allen in his individual capacity only for violations of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

177. At all relevant times during his interaction with Roberson on July 3, 2023, Kyle Allen acted under color of law.

178. It was clearly established on July 3, 2023, that a law enforcement officer's use of excessive force during an arrest violated constitutional rights.

179. It was clearly established on July 3, 2023, that law enforcement officers must not use any more physical force than necessary against an individual during an arrest.

180. Kyle Allen used more force than was necessary under the circumstances when he tackled Roberson on July 3, 2023.

181. Kyle Allen knew he was using more force than was necessary under the circumstances when he tackled Roberson on July 3, 2023.

182. Kyle Allen used more force than was necessary under the circumstances when he deployed his taser on Roberson on July 3, 2023.

183. Kyle Allen used more force than was necessary to maintain control of Roberson when he deployed his taser on Roberson on July 3, 2023.

184. Kyle Allen used more force than was necessary to effectuate Roberson's arrest when he deployed his taser on Roberson on July 3, 2023.

185. Kyle Allen used more force than was necessary to prevent Roberson from fleeing when he deployed his taser on Roberson on July 3, 2023.

186. Kyle Allen knew he was using more force than was necessary under the circumstances when he deployed his taser on Roberson on July 3, 2023.

187. Kyle Allen's use of the taser on Roberson was unreasonable.

188. Kyle Allen knew he did not need to use the taser on Roberson for any legitimate purpose on July 3, 2023.

189. Any reasonable officer would have known on July 3, 2023, that the use of a taser on Roberson was more force than was necessary for any legitimate law enforcement purpose.

190. Any reasonable officer would have known on July 3, 2023, that tackling Roberson was more force than was necessary for any legitimate law enforcement purpose.

191. Kyle Allen's use of force on July 3, 2023, as alleged in this Complaint on Roberson was subjectively unreasonable.

192. Kyle Allen's use of force on July 3, 2023, as alleged in this Complaint on Roberson was objectively unreasonable.

193. Kyle Allen's use of the taser on July 3, 2023, caused Roberson to suffer personal injuries and damages.

194. Kyle Allen's tackling of Roberson on July 3, 2023, caused Roberson to suffer personal injuries and damages.

195. Kyle Allen's uses of force violated Roberson's rights secured to him by the Fourth and Fourteenth Amendments of the United States Constitution.

**COUNT III: Excessive Force Against Defendant John Allen**

196. Roberson reincorporates paragraphs 1-149 as if fully realleged herein.

197. Roberson brings Count One under 42 U.S.C. § 1983 against John Allen in his individual capacity only for violations of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

198. At all relevant times during his interaction with Roberson on July 3, 2023, John Allen acted under color of law.

199. It was clearly established on July 3, 2023, that a law enforcement officer's use of excessive force during an arrest violated constitutional rights.

200. It was clearly established on July 3, 2023, that law enforcement officers must not use any more physical force than necessary against an individual during an arrest.

201. John Allen used more force than was necessary under the circumstances when he tackled Roberson on July 3, 2023.

202. John Allen knew he was using more force than was necessary under the circumstances when he tackled Roberson on July 3, 2023.

203. Any reasonable officer would have known on July 3, 2023, that tackling Roberson was more force than was necessary for any legitimate law enforcement purpose.

204. John Allen's use of force on July 3, 2023, as alleged in this Complaint on Roberson was subjectively unreasonable.

205. John Allen's use of force on July 3, 2023, as alleged in this Complaint on Roberson was objectively unreasonable.

206. John Allen's tackling of Roberson on July 3, 2023, caused Roberson to suffer personal injuries and damages.

207. John Allen's use of force violated Roberson's rights secured to him by the Fourth and Fourteenth Amendments of the United States Constitution.

**COUNT IV: Failure to Intervene Against Defendant Tippens—Kyle Allen**

208. Roberson incorporates paragraphs 1-149 and 176-194 as if fully realleged herein.

209. At all times during Tippens's interaction with Roberson on July 3, 2023, Tippens exercised supervisory authority over Kyle Allen.

210. Tippens was aware on July 3, 2023, that Kyle Allen's use of a taser on Roberson was unconstitutional excessive force.

211. Despite his awareness of Kyle Allen's unconstitutional excessive force with respect to his use of a taser on Roberson on July 3, 2023, Tippens failed to intervene in any way to halt or prevent that use of force.

212. Tippens could have intervened and stopped Kyle Allen from using and continuing to use the taser on Roberson, but deliberately failed to do so.

213. Tippens was aware on July 3, 2023, that Kyle Allen's tackling of Roberson was unconstitutional excessive force.

214. Despite his awareness of Kyle Allen's unconstitutional excessive force with respect to his tackling of Roberson on July 3, 2023, Tippens failed to intervene in any way to halt or prevent that use of force.

215. Tippens could have intervened and stopped Kyle Allen from tackling Roberson but deliberately failed to do so.

216. Tippens was aware on July 3, 2023, that Kyle Allen's slamming of a car door on Roberson's head was unconstitutional excessive force.

217. Despite his awareness of Kyle Allen's unconstitutional excessive force with respect to his slamming of a car door on Roberson's head on July 3, 2023, Tippens failed to intervene in any way to halt or prevent that use of force.

218. Tippens could have intervened and stopped Kyle Allen from slamming the car door on Roberson's head but deliberately failed to do so.

219. Tippens's failure to intervene to stop Kyle Allen's excessive force against Roberson caused injury to Roberson and deprived Roberson of his constitutional rights.

**COUNT V: Failure to Intervene Against Defendant Tippens—John Allen**

220. Roberson incorporates paragraphs 1-149 and 199-206 as if fully realleged herein.

221. At all times during Tippens's interaction with Roberson on July 3, 2023, Tippens exercised supervisory authority over John Allen.

222. Tippens was aware on July 3, 2023, that John Allen's tackling of Roberson was unconstitutional excessive force.

223. Despite his awareness of John Allen's unconstitutional excessive force with respect to his tackling of Roberson on July 3, 2023, Tippens failed to intervene in any way to halt or prevent that use of force.

224. Tippens could have intervened and stopped John Allen from tackling Roberson but deliberately failed to do so.

225. Tippens was aware on July 3, 2023, that John Allen's slamming of a car door on Roberson's head was unconstitutional excessive force.

226. Despite his awareness of John Allen's unconstitutional excessive force with respect to his slamming of a car door on Roberson's head on July 3, 2023, Tippens failed to intervene in any way to halt or prevent that use of force.

227. Tippens could have intervened and stopped John Allen from slamming the car door on Roberson's head but deliberately failed to do so.

228. Tippens's failure to intervene to stop John Allen's excessive force against Roberson caused injury to Roberson and deprived Roberson of his constitutional rights.

**COUNT VI: Failure to Intervene Against Defendant Kyle Allen—Tippens**

229. Roberson incorporates paragraphs 1-149 and 153-173 as if fully realleged herein.

230. At all times during Kyle Allen's interaction with Roberson on July 3, 2023, Kyle Allen exercised the authority to intervene to stop or prevent unlawful acts of other employees of the Butts County Sheriff's Office.

231. Kyle Allen was aware on July 3, 2023, that Tippens's use of a taser on Roberson was unconstitutional excessive force.

232. Despite his awareness of Tippens's unconstitutional excessive force with respect to his use of a taser on Roberson on July 3, 2023, Kyle Allen failed to intervene in any way to halt or prevent that use of excessive force.

233. Kyle Allen could have intervened and stopped Tippens's use of the taser and continued use of the taser on Roberson but deliberately failed to do so.

234. Kyle Allen was aware on July 3, 2023, that Tippens's tackling of Roberson was unconstitutional excessive force.

235. Despite his awareness of Tippens's unconstitutional excessive force with respect to his tackling of Roberson on July 3, 2023, Kyle Allen failed to intervene in any way to halt or prevent that use of excessive force.

236. Kyle Allen could have intervened and stopped Tippens from tackling Roberson but deliberately failed to do so.

237. Kyle Allen was aware on July 3, 2023, that Tippens's slamming of a car door on Roberson's head was unconstitutional excessive force.

238. Despite his awareness of Tippens's unconstitutional excessive force with respect to his slamming of a car door on Roberson's head on July 3, 2023, Kyle Allen failed to intervene in any way to halt or prevent that use of force.

239. Kyle Allen could have intervened and stopped Tippens from slamming the car door on Roberson's head but deliberately failed to do so.

240. Kyle Allen's failure to intervene to stop Tippens's excessive force against Roberson caused injury to Roberson and deprived Roberson of his constitutional rights.

**COUNT VII: Failure to Intervene Against Defendant Kyle Allen—John Allen**

241. Roberson incorporates paragraphs 1-152 and 199-206 as if fully realleged herein.

242. At all times during Kyle Allen's interaction with Roberson on July 3, 2023, Kyle Allen exercised the authority to intervene to stop or prevent unlawful acts of other employees of the Butts County Sheriff's Office.

243. Kyle Allen was aware on July 3, 2023, that John Allen's tackling of Roberson was unconstitutional excessive force.

244. Despite his awareness of John Allen's unconstitutional excessive force with respect to his tackling of Roberson on July 3, 2023, Kyle Allen failed to intervene in any way to halt or prevent that use of excessive force.

245. Kyle Allen could have intervened and stopped John Allen from tackling Roberson but deliberately failed to do so.

246. Kyle Allen was aware on July 3, 2023, that John Allen's slamming of a car door on Roberson's head was unconstitutional excessive force.

247. Despite his awareness of John Allen's unconstitutional excessive force with respect to his slamming of a car door on Roberson's head on July 3, 2023, Kyle Allen failed to intervene in any way to halt or prevent that use of force.

248. Kyle Allen could have intervened and stopped John Allen from slamming the car door on Roberson's head but deliberately failed to do so.

249. Kyle Allen's failure to intervene to stop John Allen's excessive force against Roberson caused injury to Roberson and deprived Roberson of his constitutional rights.

**COUNT VIII: Failure to Intervene Against Defendant John Allen—Tippens**

250. Roberson incorporates paragraphs 1-152 and 153-173 as if fully realleged herein.

251. At all times during John Allen's interaction with Roberson on July 3, 2023, John Allen exercised the authority to intervene to stop or prevent unlawful acts of other employees of the Butts County Sheriff's Office.

252. John Allen was aware on July 3, 2023, that Tippens's use of a taser on Roberson was unconstitutional excessive force.

253. Despite his awareness of Tippens's unconstitutional excessive force with respect to his use of a taser on Roberson on July 3, 2023, John Allen failed to intervene in any way to halt or prevent that use of excessive force.

254. John Allen could have intervened and stopped Tippens use of the taser and continued use of the taser on Roberson but deliberately failed to do so.

255. John Allen was aware on July 3, 2023, that Tippens's tackling of Roberson was unconstitutional excessive force.

256. Despite his awareness of Tippens's unconstitutional excessive force with respect to his tackling of Roberson on July 3, 2023, John Allen failed to intervene in any way to halt or prevent that use of excessive force.

257. John Allen could have intervened and stopped Tippens from tackling Roberson but deliberately failed to do so.

258. John Allen was aware on July 3, 2023, that Tippens's slamming of a car door on Roberson's head was unconstitutional excessive force.

259. Despite his awareness of Tippens's unconstitutional excessive force with respect to his slamming of a car door on Roberson's head on July 3, 2023, John Allen failed to intervene in any way to halt or prevent that use of force.

260. John Allen could have intervened and stopped Tippens from slamming the car door on Roberson's head but deliberately failed to do so.

261. John Allen's failure to intervene to stop Tippens's excessive force against Roberson caused injury to Roberson and deprived Roberson of his constitutional rights.

**COUNT IX: Failure to Intervene Against Defendant John Allen—Kyle Allen**

262. Roberson incorporates paragraphs 1-152 and 176-194 as if fully realleged herein.

263. At all times during John Allen's interaction with Roberson on July 3, 2023, John Allen exercised the authority to intervene to stop or prevent unlawful acts of other employees of the Butts County Sheriff's Office.

264. John Allen was aware on July 3, 2023, that Kyle Allen's use of a taser on Roberson was unconstitutional excessive force.

265. Despite his awareness of Kyle Allen's unconstitutional excessive force with respect to his use of a taser on Roberson on July 3, 2023, John Allen failed to intervene in any way to halt or prevent that use of force.

266. John Allen could have intervened and stopped Kyle Allen's use of the taser and continued use of the taser on Roberson but deliberately failed to do so.

267. John Allen was aware on July 3, 2023, that Kyle Allen's tackling of Roberson was unconstitutional excessive force.

268. Despite his awareness of Kyle Allen's unconstitutional excessive force with respect to his tackling of Roberson on July 3, 2023, John Allen failed to intervene in any way to halt or prevent that use of force.

269. John Allen could have intervened and stopped Kyle Allen's from tackling Roberson but deliberately failed to do so.

270. John Allen was aware on July 3, 2023, that Kyle Allen's slamming of a car door on Roberson's head was unconstitutional excessive force.

271. Despite his awareness of Kyle Allen's unconstitutional excessive force with respect to his slamming of a car door on Roberson's head on July 3, 2023, John Allen failed to intervene in any way to halt or prevent that use of force.

272. John Allen could have intervened and stopped Kyle Allen from slamming the car door on Roberson's head but deliberately failed to do so.

273. John Allen's failure to intervene to stop Kyle Allen's excessive force against Roberson caused injury to Roberson and deprived Roberson of his constitutional rights.

WHEREFORE, Roberson prays:

A. That all special and general damages be awarded to Roberson in an amount shown by the evidence and determined by the enlightened conscious of the jury;

B. That punitive damages be awarded against each and every Defendant when allowable by law in an amount to be determined by the enlightened conscious of the jury to punish these Defendants and deter Defendants and others from similar misconduct in the future;

C. That a trial by jury be had on all issues permitted;

D. That attorneys' fees, costs, and expenses of litigation be awarded as authorized under the law;

E. Such other further equitable or monetary relief as the Court deems just and proper.

Dated: July 3, 2025

**HALL & LAMPROS, LLP**

*/s/ Ligia-Ioana Mensah*
Andrew Lampros
Ga. Bar #432328
Adam T. Mills
Ga. Bar #123930
Ligia-Ioana Mensah
Ga. Bar #184438
300 Galleria Pkwy SE
Suite 300
Atlanta, GA 30339
Tel.: (404) 876-8100
Fax: (404) 876-3477
alampros@hallandlampros.com
adam@hallandlampros.com
ligia@hallandlampros.com

*Attorneys for Plaintiff*